IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COHEN-ESREY REAL ESTATE )
SERVICES, INC., )
                                )
    Plaintiff, )
                                )   CIVIL ACTION
v. )
                                )   No. 08-2527-KHV
TWIN CITY FIRE INSURANCE COMPANY )
and HARTFORD FIRE INSURANCE )
COMPANY, )
                                )
    Defendants, )
_____ )

## MEMORANDUM AND ORDER

Plaintiff brings suit against Twin City Fire Insurance Company, alleging state law claims arising from the defendant's denial of coverage under a policy of insurance. Plaintiff alleges breach of contract (Count II), vexatious refusal to pay (Count IV) and money owed/reimbursement (Count V). See First Amended Complaint (Doc. #57) filed October 27, 2009. This matter is before the Court on Defendant Twin City Fire Insurance Company's Motion For Summary Judgment (Doc. #80) filed January 29, 2010, which argues that as a matter of law, its policy of insurance provides no coverage for plaintiff's claims. For reasons stated below, the Court sustains the motion.[1]

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show no genuine issue as to

---

[1] Previously, the Court informed counsel that it expected to overrule this motion. In retrospect, that advice was premature. The Court apologizes, and regrets any inconvenience to the parties or to counsel.

any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252. The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on its pleadings but must set forth specific facts. Id. The nonmoving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. Liberty Lobby, 477 U.S. at 250-51.

**Facts**

The following facts are uncontroverted or, where controverted, construed in the light most favorable to plaintiff.

Plaintiff manages Section 8 housing projects under the Housing Choice Voucher program sponsored by the United States Department of Housing and Urban Development ("HUD"). At all relevant times, plaintiff managed Quail Ridge Apartments, a Section 8 housing project in El Dorado, Kansas owned by HJS Realty. HUD subsidizes the rents for Quail Ridge tenants.

From March 19, 2001 to September 15, 2006, Brenda Phillips was property manager at Quail Ridge. Some time in 2004, Phillips began running a real estate Ponzi scheme by falsifying HUD vouchers and stealing rent money from Quail Ridge. When a qualified tenant moved out, Phillips transferred another qualified tenant into the vacant unit, then moved an unqualified tenant into that tenant's former unit. Phillips falsified lease paperwork and HUD verification forms so that HUD continued to subsidize both units, and she pocketed the cash from the unqualified tenants.

On January 6, 2005, plaintiff issued Phillips a Corrective Counseling Notice which stated that she had "[c]harged personal items on a company account without authorization" and "lied about what she'd done." Phillips had charged approximately $115 for personal items to a vendor charge account and then lied and told plaintiff that she had items to return. Plaintiff did not terminate her employment or take further action with respect to the incident. Because Phillips paid the charges, the incident did not flag an internal control violation or trigger an audit. It caused no loss to HUD or the property owner and plaintiff did not report the incident to any insurance carrier.

While Phillips's scheme was ongoing, HUD audited Quail Ridge on an annual basis by pulling certain files and verifying the paperwork. Quail Ridge passed this audit every year. The Kansas Housing Resources Corporation performed a management and occupancy review at Quail Ridge two or three times and Quail Ridge passed every time. Quail Ridge tenant files

which Phillips prepared were all approved by plaintiff's central compliance procedures. On September 6, 2006, a funding source for Quail Ridge issued a Project Compliance Memo which stated that as of March 30, 2006, Quail Ridge was deemed to be in compliance with the AHP Federal Regulations for Long-term Monitoring (2004). A copy of that memo went to the property owner.

On September 11, 2006, Kansas Housing Resources Corporation performed a management and occupancy review at Quail Ridge. Phillips was sick and did not report for work that day. A woman who claimed to be locked out of her apartment went to the Quail Ridge office and plaintiff discovered that she was not listed as a tenant on the rent roll. Four days later, on September 15, 2006, plaintiff terminated Phillips' employment. At that time, plaintiff knew that tenants were living in units for which plaintiff did not have adequate records. It did not know how many of the 60 units were affected, so it initiated an internal investigation. On September 21, 2006, plaintiff discovered that Phillips had forged leases and income verifications and that many tenants were not qualified to live at Quail Ridge.

Plaintiff's regular practice is to promptly report to its insurance carriers any occurrences that might trigger coverage under any insurance policies. On September 28, 2006, plaintiff submitted a Notice of Claim under a Hartford Fire insurance policy (No. 00 FA 0228018-06) which stated "Apartment property manager embezzled cash from rents. Loss is approx. $260K." On October 13, 2006, plaintiff submitted to Hartford an Internal Investigation Preliminary Summary and a sworn "Proof of Loss" which certified that it had discovered the loss on September 11, 2006.

On October 30, 2006, plaintiff submitted a Notice of Circumstance to Nutmeg Insurance Company under a General Liability Notice of Occurrence/Claim insurance policy. In the

"Remarks" section of the notice, plaintiff stated that "Apartment property mgr. embezzled cash from rents. Loss is approx. $260K."

On April 23, 2007, plaintiff supplemented the Hartford proof of loss after completing its investigation and discovering the full scope of Phillips' scheme. Plaintiff had investigated for several months and walked through every unit to determine which tenants were qualified to live at Quail Ridge, analyzed tenant files and reverified tenants, communicated with HUD about its findings and obtained HUD approval of the amount which plaintiff owed HUD for improper rent subsidies.

On June 7, 2007, the property owner, HJS Realty, sent a letter to plaintiff asserting that plaintiff had negligently retained and/or supervised Phillips and demanding that plaintiff reimburse it for vacancy and rent losses. Specifically, HJS alleged that the conduct which resulted in the Corrective Counseling Notice on January 6, 2005, should have caused plaintiff to terminate Phillips' employment or to investigate and monitor all of her financial activities and to take extra measures to continuously verify that she was acting properly. Plaintiff eventually paid HJS Realty $56,955.00 for vacancy and rent losses when plaintiff removed unqualified tenants from Quail Ridge and for rents lost from Phillips' embezzlement.

Because of the demand letter from HJS Realty, on June 13, 2007 plaintiff submitted a Notice of Claim under its Twin City claims made and reported insurance policy (No. 00PG0226923) effective November 1, 2006 to November 1, 2007. The policy obligated Twin City to pay all sums in excess of an applicable retention that plaintiff became legally obligated to pay as "loss" from claims first made during the policy period for a "wrongful act" by plaintiff or an entity for whom plaintiff was legally responsible. The policy defined "wrongful act" as any actual or alleged negligent act, error or omission in the rendering of or

failure to render professional services. A condition precedent to coverage, however, was that as of the inception date (November 1, 2006), plaintiff was not aware of any "wrongful act," fact, circumstance or situation that it knew, or could reasonably have foreseen, might result in a claim under the policy.[2] Twin City denied coverage of plaintiff's claim.[3]

## **Analysis**

Plaintiff alleges breach of contract (Count II), vexatious refusal to pay (Count IV) and money owed/reimbursement (Count V). Twin City seeks summary judgment on each claim. Specifically, Twin City argues that plaintiff's claims are barred by plaintiff's prior knowledge of Phillips' scheme[4] and various exclusions under the policy. The Court finds that the prior knowledge condition precludes coverage, and does not reach Twin City's other arguments.

Because this is a diversity action, the Court applies the substantive law of the forum state, in this case Kansas. Advantage Homebuilding, LLC. v. Md. as. Co., 470 F.3d 1003, 1007 (10th Cir. 2006).

---

[2] The policy also excluded coverage for claims based upon or arising from any (1) wrongful act," fact or circumstance which plaintiff reported to any insurer before the effective date of the policy (the "prior reporting exclusion"), (2) dishonest, malicious or fraudulent acts or omissions, willful violations of law or "wrongful acts" established by an admission, judgment or other final adjudication adverse to the plaintiff (the "dishonest act exclusion"), and (3) actual or alleged inability or failure to pay, collect or safeguard funds or improper or wrongful collection of fees, charges, fines, payments, assessments or penalties from a tenant (Endorsement No. 10).

[3] The record contains no evidence which explains why Twin City denied coverage. The Court presumes that it denied coverage on all bases upon which it now seeks summary judgment.

[4] Twin City describes this policy provision as a "prior knowledge exclusion" and cites Roesler v. TIG Ins. Co., 251 Fed. Appx. 489 (10th Cir. 2007), to support this characterization. The Roesler opinion does not directly quote from the policy language which it applies. Therefore the Court cannot determine whether that opinion implicates a true exclusion or a condition precedent to coverage, which is implicated in this case.

Twin City argues that it is entitled to summary judgment under the condition precedent because plaintiff had prior knowledge – before the policy commenced on November 1, 2006 -- that it might face a liability claim. Twin City argues that even though plaintiff had already made claims based on Phillips' conduct to two other insurers, it failed to inform Twin City of Phillips' scheme. As noted, under the policy Twin City agreed to pay all loss resulting from claims first made during the policy period, provided that as a condition precedent to coverage

> as of the inception date no partner, principal, officer, director, or member of the Insured was aware of any Wrongful Act, fact, circumstance or situation that he or she knew, or could reasonably have foreseen, might result in a Claim under this Policy.

Plaintiff argues that the prior knowledge condition does not defeat coverage because as of November 1, 2006, it was not aware of (and could not have foreseen) a potential claim for negligent supervision.[5]

In characterizing the prior knowledge condition as an exclusion, Twin City complicates the analysis. Though Twin City seeks to "exclude" liability, the language in question more properly lends itself to an effort to avoid liability based on the failure of a condition precedent. See Nat'l Bank of Andover v. Kan. Bankers Surety Co., __ Kan. __, 225 P.3d 707, 717 (2010). The parties nonetheless agree that to determine whether the prior knowledge condition applies to preclude coverage in this case, the Court should apply Am. Special Risk Mgmt. Corp. v. Cahow, 286 Kan. 1134, 1155, 192 P.3d 614, 628 (2008), which sets out a two-prong objective/subjective test. Under the subjective first prong, Twin City must show plaintiff's knowledge of wrongful

---

[5] Plaintiff also argues that because the policy defines "wrongful act" as negligent behavior, Phillips' intentional embezzlement does not qualify as a wrongful act and plaintiff's prior knowledge of it does not defeat coverage. Plaintiff ignores the plain language of the condition, however, which refers not only to "wrongful acts," but also to facts, circumstances or situations which plaintiff knew or could reasonably foresee might result in a claim under the policy.

acts, facts, circumstances or situations when the policy took effect on November 1, 2006. Id. at 1156, 192 P.3d at 628-29.  The Court then applies the objective prong and asks whether, at the time the policy took effect, a reasonable person with plaintiff's knowledge "could reasonably have foreseen" that a claim under the policy might result.  Id. at 1158, 192 P.3d at 629.  The prior knowledge condition precludes coverage if a reasonable insured who knew about Phillips' conduct would have had a reasonable basis to believe that plaintiff (or an entity for whom it was responsible) had breached a professional duty.  This approach spreads the burden by requiring the insurer to prove that the insured knew necessary underlying facts, and by preventing the insured from defending on the ground that it uniquely did not understand the implications of those facts when a reasonable insured would have understood them.  286 Kan. at 1152, 192 P.3d at 626 (citing Selko v. Home Ins. Co., 139 F.3d 146, 149 (3d Cir. 1998)).

Twin City argues that before November 1, 2006, plaintiff knew about Phillips' embezzlement, that a reasonable insured would expect her embezzlement to result in a claim under the policy, and that as a matter of law, the prior knowledge condition precludes coverage.

Applying the subjective first prong, the Court finds that at the time the policy took effect on November 1, 2006, plaintiff knew the following facts: (1) within the past two years Phillips had charged personal items on a company account without authorization and had lied about her conduct; (2) plaintiff had reprimanded Phillips for dishonesty; (3) Phillips had forged leases and income verifications and embezzled cash from rents; (4) plaintiff estimated losses of approximately $260,000 from Phillips' scheme; and (5) plaintiff had submitted claims under two other insurance policies based on Phillips' conduct.

The Court next asks whether knowledge of these facts would cause a reasonable insured to reasonably foresee that a claim might result under the policy.  The Court concludes as a matter

of law that it would.  Plaintiff's position is that even though Phillips had improperly charged $115 on plaintiff's account, it could not have anticipated a specific *type* of claim, i.e. one for negligent supervision/retention.  The issue, however, is whether plaintiff knew of facts which might result in any claim under the policy – not whether plaintiff reasonably anticipated the particular type of claim which ultimately resulted.  Neither the insurer nor the insured knows ahead of time which claims will give rise to liability; therefore, to properly allocate the risk, policies place the burden on the insured to disclose known facts or circumstances which can reasonably be expected to give rise to a claim so the costs of those risks can be evaluated with all relevant information accessible to all parties.  Id. at 1156, 192 P.3d at 628.  Here, plaintiff knew facts from which a reasonable insured would reasonably foresee that a claim (including a claim for negligent supervision) might result.

As a result of failure of the condition precedent, Twin City is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Defendant Twin City Fire Insurance Company's Motion For Summary Judgment (Doc. #80) filed January 29, 2010 be and hereby is **SUSTAINED.**

Dated this 24th day of May, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge
