IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COHEN-ESREY REAL ESTATE )
SERVICES, INC., )
 )
      **Plaintiff,** )
 ) CIVIL ACTION
v. )
 ) No. 08-2527-KHV
TWIN CITY FIRE INSURANCE COMPANY )
and HARTFORD FIRE INSURANCE )
COMPANY, )
 )
      **Defendants,** )
_____)

## MEMORANDUM AND ORDER

Plaintiff brings suit against Hartford Fire Insurance Company for wrongful denial of insurance claims. Specifically, plaintiff alleges breach of contract (Count I) and vexatious refusal to pay (Count III). Plaintiff also seeks reimbursement (Count V). See First Amended Complaint (Doc. #57) filed October 27, 2009. This matter is before the Court on Defendant Hartford Fire Insurance Company's Motion For Summary Judgment (Doc. #82) filed January 29, 2010, which argues that its policy provides no coverage. For reasons stated below, the Court overrules Hartford's motion.

### Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it

"might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252. The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on its pleadings but must set forth specific facts. Id. The nonmoving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. Liberty Lobby, 477 U.S. at 250-51.

**Facts**

The following facts are uncontroverted or, where controverted, construed in the light most favorable to plaintiff.

Plaintiff manages Section 8 housing projects under the Housing Choice Voucher program sponsored by the United States Department of Housing and Urban Development ("HUD"). At all relevant times, plaintiff managed Quail Ridge Apartments, a Section 8 housing project in

El Dorado, Kansas. HUD subsidizes the rents for Quail Ridge tenants.

From March 19, 2001 to September 15, 2006, Brenda Phillips was property manager at Quail Ridge. Sometime in 2004, Phillips began running a real estate Ponzi scheme by falsifying HUD vouchers and stealing rent money from Quail Ridge. When a qualified tenant moved out of the property, Phillips transferred another qualified tenant into the vacant unit, then moved an unqualified tenant into that tenant's former unit. Phillips falsified lease paperwork and HUD verification forms so that HUD continued to subsidize both units, and she pocketed the cash from the unqualified tenants.

On January 6, 2005, plaintiff issued Phillips a Corrective Counseling Notice, which became part of Phillips' employee file. The Corrective Counseling Notice stated that Phillips "[c]harged personal items on company account without authorization" and that although she later paid for the items, she had "lied about what she'd done to owner and employer after the fact." It further stated that Phillips "understands she cannot charge personal items and that employee dishonesty is unacceptable." Phillips intentionally charged the items and lied about charging the items. Phillips concedes that her actions were dishonest and that her supervisor talked to her about employee dishonesty.

Plaintiff did not terminate Phillips' employment or take further action with respect to the incident. Because Phillips paid the charges, the incident did not flag an internal control violation or trigger an audit. It caused no loss to HUD or the property owner and plaintiff did not report the incident to any insurance carrier.

While Phillips's scheme was ongoing, HUD audited Quail Ridge on an annual basis by pulling certain files and verifying the paperwork. Quail Ridge passed this audit every year. The Kansas Housing Resources Corporation performed a management and occupancy review at

Quail Ridge two or three times and Quail Ridge passed every time.  Quail Ridge tenant files which Phillips prepared were all approved by plaintiff's central compliance procedures.  On September 6, 2006, a funding source for Quail Ridge issued a Project Compliance Memo which stated that as of March 30, 2006, Quail Ridge was deemed to be in compliance with the AHP Federal Regulations for Long-term Monitoring (2004).

On September 11, 2006, a woman who claimed to be locked out of her apartment went to the Quail Ridge office.  Plaintiff then discovered that the woman was not named on the rent roll as a tenant.  On September 21, 2006, plaintiff discovered that Phillips had forged leases and income verifications and that many tenants were not qualified to live at Quail Ridge.

Plaintiff's regular practice is to promptly report to its insurance carriers any occurrences that might trigger coverage under any insurance policies.  On September 28, 2006, plaintiff submitted a Notice of Claim under a Hartford Fire "Crime Shield" insurance policy (No. 00 FA 0228018-06).  The policy period was January 1, 2006 until cancelled.  The Hartford policy originated in 2004 and the parties renewed it for both 2005 and 2006.  Plaintiff paid approximately $3,000 in annual premiums for this coverage.  The policy provided that Hartford would indemnify plaintiff for loss which resulted directly from "theft" by an "employee."  As to any employee, however, the policy was immediately cancelled if plaintiff discovered theft or "any other dishonest act committed by the employee."  See "Condition D" of Exhibit A to Defendant Hartford Fire Insurance Company's Memorandum In Support Of Motion For Summary Judgment (Doc. #83-2) filed January 29, 2010, at 5.  According to the policy, discovery occurred when plaintiff first became aware of facts which would cause a reasonable person to assume that a loss covered by the policy had been or might be incurred – even though the exact amount or the details of the loss might not then be known.  Discovery also occurred

when plaintiff received notice of an actual or potential claim alleging facts which, if true, would constitute a covered loss. Id. at 9.

Hartford drafted the policy. Except for the limit of insurance and deductible amount, it was a form policy and was not negotiated or modified by plaintiff or its broker. Plaintiff provided information which Hartford incorporated into its form policy.

Plaintiff's Notice of Claim on September 28, 2006 stated "Apartment property manager embezzled cash from rents. Loss is approx. $260K." On October 13, 2006, plaintiff submitted an Internal Investigation Preliminary Summary dated September 30, 2006 and a sworn "Proof of Loss" which certified that it had discovered the loss on September 11, 2006.

On April 23, 2007, plaintiff supplemented its proof of loss after completing its investigation and discovering the full scope of Phillips' scheme. Plaintiff had investigated for several months and walked through every unit to determine which tenants were qualified to live in the Quail Ridge complex, analyzed tenant files and reverified tenants, communicated with HUD about its findings and obtained HUD approval of the amount which plaintiff owed HUD for improper rent subsidies.

Hartford denied plaintiff's claim under "Condition D," asserting that the policy was cancelled when plaintiff discovered that Phillips had engaged in a dishonest act when she lied about the $115 in personal items which she had charged on plaintiff's account. Hartford did not contact plaintiff to investigate its counseling notice to Phillips on January 6, 2005, or request information from plaintiff about what the notice meant.

The Hartford policy does not define "dishonest" or "dishonest act," and Hartford has no document, policy book, manual or other writing which explains to its adjusters what those words mean. Based upon his or her subjective opinion, the adjuster decides what constitutes a

"dishonest act" under Condition D. Hartford's corporate representative testified that a dishonest act occurs when someone "does something they know to be dishonest or untruthful," but that not all "dishonest acts" trigger automatic cancellation. For example, if an employee lied about whether she brushed her teeth or called in sick without justification, the clause would not be triggered. The adjuster uses common sense to determine whether a dishonest act triggers a cancellation.

Plaintiff interprets "dishonest act" to mean an "intentional action of an individual that results in harm to another." Plaintiff testified that Phillips' embezzlement was completely unrelated to the incident on January 6, 2005; that Phillips' paperwork passed internal compliance procedures; that plaintiff received third-party audit confirmation of the same paperwork; and that even after January 6, 2005, it could not have prevented Phillips' embezzlement.

## **Analysis**

Plaintiff alleges state law claims for breach of contract (Count I), vexatious refusal to pay (Count III) and reimbursement (Count V). Hartford seeks summary judgment on all claims. If Hartford properly denied coverage, it is entitled to summary judgment on all counts.

Hartford argues that the policy affords no coverage because of Phillips' prior dishonest act. Plaintiff counters that a genuine issue of material fact precludes summary judgment and that dishonesty is not a defined term and the policy is ambiguous. Plaintiff notes that under the policy, a "dishonest act" is "discovered" when the insured first learns of facts which would cause "a reasonable person to assume that a loss covered by this Policy has been, or may be incurred." Plaintiff argues that Phillips' improper charges were not a covered loss under the policy and that prior to September 11, 2006 it had not discovered a dishonest act which would lead a reasonable person to assume that a covered loss had been or might be incurred. Hartford counters that this

- 6 -

act constituted a covered loss. This argument is problematic, among other reasons, because the amount charged was small, Phillips paid for the items and plaintiff sustained no loss and took no action which suggests it considered Phillips' conduct a covered loss under the policy.

Because this is a diversity action, the Court applies the substantive law of the forum state, in this case Kansas. Advantage Homebuilding, LLC. v. Md. Cas. Co., 470 F.3d 1003, 1007 (10th Cir. 2006). Under Kansas law, whether a written instrument is ambiguous is a question of law for the Court. Am. Family Mut. Ins. Co. v. Wilkins, 285 Kan. 1054, 1059, 179 P.3d 1104, 1109 (Kan. 2008) (quoting O'Bryan v. Columbia Ins. Group, 274 Kan. 572, 575-76, 56 P.3d 789 (2002)). The Court must construe an insurance policy to give effect to the intention of the parties. Wilkins, 285 Kan. at 1058, 179 P.3d at 1109. To do so, it should consider the policy as a whole and try to determine what the parties intended from the language they used, taking into account the situation of the parties, the nature of the subject matter and the purpose to be accomplished. Id. Policy language which is clear and unambiguous must be taken in its plain, ordinary and popular sense. 285 Kan. at 1059, 179 P.3d at 1109. In such case, the Court need not interpret the policy language or apply the rules of liberal construction and must enforce the contract as made. Id. If, however, provisions or language have doubtful or conflicting meaning after a natural and reasonable interpretation of the policy, the policy is ambiguous. 285 Kan. at 1058, 179 P.3d at 1109-10. Stated another way, a policy is ambiguous if after applying the pertinent rules of interpretation, the Court is genuinely uncertain which one of two or more meanings is the proper meaning. Id. Courts should not strain to create an ambiguity where in common sense, one does not exist. Id.

Where the terms of an insurance policy are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must

prevail.  Id.  The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.  Id.  This is so because the insurer prepares its own contracts and therefore has a duty to make the meaning clear; if it intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured.  Id.

Hartford argues that the policy is not ambiguous and that the terms "dishonesty" and "dishonest act" should be interpreted according to their plain meaning.  It cites First Hays Banshares, Inc. v. Kan. Bankers Sur. Co., 244 Kan. 576, 587, 769 P.2d 1184, 1192 (Kan. 1989), to support its argument that the word "dishonest" is to be given a "broad meaning" and includes acts "which show a want of integrity or breach of trust."  In First Hays, plaintiff (a bank) sought coverage under a fidelity bond which covered loss that resulted from an employee's dishonest or fraudulent acts.  One of plaintiff's board members had deposited insufficient funds checks and later obtained loans by falsely alleging a purchase money security interest in cattle which did not exist.  The insurer denied coverage, asserting that the scheme was not a "dishonest act" under the fidelity bond.  Id.  The district court disagreed, finding as a matter of law that the board member had engaged in a "calculated scheme by which he used his extraordinary position of trust to enhance his personal financial gain at the expense of his employer."  Id.  The Kansas Supreme Court affirmed, noting that the policy defined "dishonest or fraudulent acts" as acts committed by an employee with manifest intent to cause the insured to sustain loss and to obtain financial benefit for himself or someone else, and that "dishonest" and "fraudulent" should be broadly construed in the context of a fidelity bond.  Id.

In First Hays, the Kansas Supreme Court construed the policy broadly so as to *afford*

coverage, which is consistent with Kansas law which construes policies liberally in favor of the insured. See Catholic Diocese of Dodge City v. Raymer, 251 Kan. 689, 693, 840 P.2d 456 (Kan. 1992). Here, Hartford attempts to use the same policy language to defeat coverage. Coverage clauses are interpreted broadly to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly. See Dodson Aviation, Inc. v. Rollins, Burdick, Hunter of Kan., Inc., 15 Kan. App.2d 314, 319, 807 P.2d 1319, 1323 (Kan. Ct. App. 1991) (quoting Cent. Sec. Mut. Ins. Co. v. DePinto, 235 Kan. 331, 333-34, 681 P.2d 15 (1984)). As applied in this case, however, the terms "dishonesty" and "dishonest act" are not ambiguous. See Troy State Bank v. Bancinsure, Inc., 109 P.3d 203 (Table), 2005 WL 824031, at *4 (Kan. Ct. App. 2005) (collecting cases). The question is whether Phillips' dishonest act prior to September 11, 2006 would have caused a reasonable person to assume that a covered loss had been or might be incurred under the policy.

In First Hays, as here, the insurer argued that coverage terminated under a cancellation provision very much like the one at issue here. 244 Kan. at 588, 769 P.2d at 1192. Specifically, the insurer argued that coverage terminated when plaintiff first learned of the insufficient funds checks. Id. The district court disagreed, concluding that though the bank knew about the checks, it did not know that the board member was engaging in dishonest or fraudulent conduct. Id. It therefore found that plaintiff's knowledge of the bad checks did not trigger the termination provision, and the Kansas Supreme Court agreed. Id.

Conversely, in Troy State Bank, where an employee "surreptitiously and without authority" raised the credit limit on her bank-issued VISA card and then maxed out the card, the Kansas Court of Appeals applied a similar termination provision to terminate coverage. Troy State Bank, 2005 WL 824031, at *4-6. The bank had placed the employee on probation,

- 9 -

required her to undergo counseling and promptly pay the losses, requested a determination of future coverage from its bonding company and conditioned the employee's future employment on continued coverage. Id. at *1. The bonding company determined that the employee was not covered, but the bank never received its response and continued to employ her. The employee then embezzled more than $50,000 from customer accounts. Id. The Kansas Court of Appeals found that the employee's unauthorized extension of her personal credit limit constituted dishonest conduct, which the bank had obviously discovered. Id. Though the bank argued that a reasonably prudent insured would not have perceived the unauthorized extension as dishonest, the Court of Appeals disagreed. It found that the employee's conduct was a coverable loss under the bond for which the bank could have submitted a proof of loss (had it suffered one), that the employee had committed a dishonest act about which the bank had knowledge, and that coverage thus terminated. Id. at *5.

In this case, plaintiff has raised a genuine issue of material fact whether a reasonable person with knowledge of Phillips' conduct before September 11, 2006 would have assumed that a covered loss had been or might be incurred under the policy. Construing the facts in the light most favorable to plaintiff, and giving a narrow construction to policy language which Hartford invokes to defeat coverage, the Court cannot find for Hartford as a matter of law. See Troy State Bank, 2005 WL 824031, at *5 (to trigger cancellation, ordinary, reasonable and sensible employer must know from facts that dishonesty has occurred which might trigger surety liability). Hartford is therefore not entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendant Hartford Fire Insurance Company's Motion For Summary Judgment (Doc. #82) filed January 29, 2010 be and hereby is **OVERRULED.**

Dated this 20th day of May, 2010 at Kansas City, Kansas.

>s/ Kathryn H. Vratil
>KATHRYN H. VRATIL
>United States District Judge